IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERN L. ROSENBARKER,

       **Plaintiff,**

vs.                                                                   No.  98cv1561 M/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Rosenbarker's) Motion to Reverse or Remand Administrative Decision, filed August 30, 1999.  The Commissioner of Social Security issued a final decision finding no good cause for missing the deadline to request review of Rosenbarker's prior applications for benefits and denying Rosenbarker's request to reopen his prior application.  The Commissioner found Rosenbarker was not eligible for disability insurance benefits under Title II of the Social Security Act because his insured status had expired.  The Commissioner denied  Rosenbarker's most recent claim on the grounds of *res judicata*.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to reverse is not well taken and will be DENIED.

### I.  Procedural History

     In 1979, Rosenbarker applied for disability benefits under Title II of the Social Security Act.  His claim was denied.  Rosenbarker did not appeal the decision denying him disability

benefits.  Instead, on August 9, 1982, Rosenbarker filed a second application.  This claim also was denied, and Rosenbarker did not appeal the decision.  On September 27, 1985, Rosenbarker filed his third and present, application.  The 1985 application was denied at the initial level on August 26, 1991.  On November 3, 1992, the 1985 application was denied at the reconsideration level.  Rosenbarker requested a hearing before an Administrative Law Judge (ALJ).  The ALJ held a hearing on October 28, 1993.  On January 24, 1994, the ALJ issued his Decision, finding that the issues before him had been previously adjudicated and thus *res judicata* applied.  On February 2, 1994, Rosenbarker requested review of the ALJ's January 24, 1994 Decision.  On October 14, 1994, the Appeals Council denied Rosenbarker's request for review of the ALJ's January 24, 1994 Decision.

Rosenbarker then filed an appeal in the United States District Court.  On January 26, 1995, Defendant filed a Motion to Dismiss, contending the Court lacked subject matter jurisdiction.  On May 8, 1995, the Honorable Don J. Svet, United States Magistrate Judge, entered his Magistrate Judge's Analysis and Recommended Disposition, recommending that Defendant's Motion to Dismiss be granted.  Rosenbarker filed objections to parts of Judge Svet's analysis and recommended disposition.  On August 25, 1999, the Honorable James A. Parker made a de novo review of those parts of Judge Svet's analysis and recommended disposition to which Rosenbarker objected.  Judge Parker adopted Judge Svet's analysis and recommended disposition, granted Defendant's Motion to Dismiss, and dismissed Rosenbarker's Complaint.  On October 3, 1995, Rosenbarker appealed Judge Parker's ruling to the Court of Appeals for the Tenth Circuit.

While the case was pending at the Court of Appeals, the Commissioner agreed to remand

the case to the Social Security Administration's (SSA) Office of Hearings and Appeals to consider whether, under the standards in Social Security Ruling 95-1p,[1] Rosenbarker was adversely affected by the notices he received from the SSA after filing applications in 1979 and 1982, which he claimed were inadequate.  On June 25, 1996, the Office of Hearings and Appeals vacated the January 24, 1994 Order of Dismissal and remanded the case to an ALJ, directing him to provide Rosenbarker an opportunity to appear at a hearing and to determine whether, pursuant to Social Security Ruling 95-1p, good cause existed to extend the time for filing administrative review of the determinations issued in 1979 and 1982.

On May 28, 1997, Rosenbarker appeared with counsel before the ALJ.  On June 25, 1997, the ALJ entered his Decision, finding Rosenbarker had not shown good cause to reopen the 1982 application, and thus *res judicata* applied.  The ALJ made no findings regarding the 1979 application.  Rosenbarker appealed the ALJ's decision to the Appeals Council.  The Appeals Council found there was no basis under the regulations for it to assume jurisdiction. Tr. 10.  On December 22, 1998, Rosenbarker filed this action, seeking judicial review of the June 25, 1997 Decision.  On August 30, 1999, Rosenbarker filed the instant motion.

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

---

[1] The Social Security Administration issued Social Security Ruling 95-1p to reflect the Social Security Administration's policy on establishing good cause for late filing of a request for administrative review as it applies to a claimant who received an initial or reconsideration determination notice dated prior to July 1, 1991, which did not state that filing a new application instead of a request for administrative review could result in the loss of benefits.  Social Security Ruling 95-1p, 1995 WL 259487, at *1.

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In support of his motion to reverse and remand the administrative decision, Rosenbarker makes the following arguments: (1) the ALJ violated clearly established law regarding the type of language that is misleading on its face in denial notices; (2) the ALJ's failure to find good cause in this case is not supported by substantial evidence and is contrary to law; (3) the ALJ misapplied the law regarding the consideration of drug and alcohol use in disability determinations; and (4) the case must be remanded for consideration of the issue of reopening the first application.

The Commissioner contends the Court does not have jurisdiction to review his determination that the record did not establish good cause for missing the deadline to request administrative review or good cause for reopening Rosenbarker's prior applications. In the alternative, if the Court finds it has jurisdiction to review the Commissioner's determination, the Commissioner contends substantial evidence supports his findings.

The Court must first address the Parties' Joint Stipulation entered into while the case was pending at the Court of Appeals for the Tenth Circuit. The Commissioner stipulated:

> The Commissioner of Social Security . . . will remand the Plaintiff's case to the Social Security Administration's (SSA's) Office of Hearings and Appeals to reconsider, under the standards set forth in Social Security Ruling 95-1p, whether the Plaintiff was adversely affected by notices, which he claims were inadequate, that he received from SSA after filing applications in 1979 and 1982.
>
> * * * * * *
>
> If the Plaintiff is not satisfied with the Commissioner's decision on remand, he shall have the right to file a new action seeking judicial review of the final decision of the Commissioner under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), once all of the Plaintiff's administrative remedies have been exhausted.

TR. 246-47. Rosenbarker contends this Stipulation grants the Court jurisdiction to review the Commissioner's decision. However, "[s]ubject-matter jurisdiction is an Art. III as well as a statutory requirement; it functions as a restriction on federal power . . . . For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant." *Insurance Corp. of Ireland, LTD v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Therefore, the parties' Stipulation does not confer subject matter jurisdiction on the Court to review the Commissioner's determination.

Rosenbarker contends the ALJ erred in finding he had not shown good cause to reopen his 1982 application and in finding *res judicata* applied. Because such a refusal is not a final decision within the meaning of 42 U.S.C. 405(g), this Court lacks jurisdiction to review the Commissioner's refusal to reopen a claim for disability benefits or determination such claim is *res judicata*. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). An exception to this general rule is if a plaintiff raises a colorable constitutional claim in connection with the Commissioner's refusal to reopen. *Califano v. Sanders*, 430 U.S. 99, 108 (1977); *Nelson v. Secretary of Health and Human Servs.*, 927 F.2d 1109, 1111 (10th Cir. 1990). In this case, Rosenbarker claims a violation of his due process resulting from denial notices he contends inadequately informed and misled him as to the *res judicata* effect if he elected not to pursue the application further.

In *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir.), *cert. denied*, 516 U.S. 806 (1995), the Court of Appeals held that, in order to establish standing to raise such a claim, "a plaintiff must demonstrate reliance on the allegedly defective denial notices." Moreover, "mere receipt of an allegedly defective denial notice is [in]sufficient to establish standing." *Id.*; *see also* Social

Security Ruling 95-1p, 1995 WL 259487, at *2.  In this case, Rosenbarker has made no such showing.

In his decision, the ALJ found "the administration did nothing to mislead claimant. Claimant admits he did not read the notice past the first sentence."  Tr. 44.  Specifically, in response to the ALJ's question regarding whether he had read the documents and how he knew he had been denied benefits, Rosenbarker testified "Just to the part where it says I was denied, and I just totally threw it out– ripped them up, threw them away, and went and got drunk."  Tr. 54.

In *Gilbert v. Shalala*, the Court of Appeals for the Tenth Circuit found plaintiffs had not shown a causal connection between their injury and the allegedly deficient denial notices because plaintiffs "could not remember reading the challenged language."  *Gilbert v. Shalala,* 45 F.3d at 1394.  Therefore, the Court held Plaintiffs had failed to present evidence to establish standing. *Id.*  Social Security Ruling 95-1p also provides as follows:

> SSA will make a finding of good cause for late filing of a request for administrative review for a title II . . . claim if a claimant received a notice covered by this Ruling and demonstrates that, as a result of the notice, he or she did not timely request such review.  The mere receipt of a notice covered by this Ruling will not, by itself, establish good cause.

Social Security Ruling 95-1p, 1995 WL 259487, at *2.

Rosenbarker cites to several cases for the proposition that a denial notice violates a claimant's due process rights if it misleads the claimant regarding his right to file a new application and fails to inform the claimant that failure to appeal results in the loss of benefits.  *See e.g., Day v. Shalala*, 23 F.3d 1052, 1065 (6th Cir. 1994)(denial of benefits notices issued by agency which did not indicate that determination denying benefits was final if no request for

6

reconsideration was made violated claimants' due process rights);*Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990)(use of notice which did not indicate that determination denying benefits was final if no request for reconsideration was made violated claimant's due process rights).

Rosenbarker also cites to *Burks-Marshall v. Shalala,* 7 F.3d 1346 (8th Cir. 1993). However, in *Burks-Marshall v. Shalala,* the Court of Appeals for the Eighth Circuit held that claimant lacked standing to raise the due process issue because "she had not shown that the alleged deficiency in the notice had any connection in fact with her own failure to seek review of the two early denials." *Id.* at 1349. In the Tenth Circuit, a plaintiff must show a causal connection between his or her injury and the allegedly deficient denial notices to establish standing.

Applying *Gilbert v. Shalala* and the pertinent Social Security Ruling 95-1p language to the facts in this case, the Court finds that Rosenbarker has failed to present any evidence that **his reliance on the language** in the denial notices resulted in his failure to appeal. Accordingly, Rosenbarker has not presented a colorable constitutional claim under this theory. However, a claimant who has a mental disability raises a colorable due process claim by alleging that the disability prevented him or her from proceeding in a timely fashion from one administrative stage to the next. *London v. Apfel*, 202 F.3d 282, 1999 WL 1244475, at *3 (10th Cir. Dec. 20, 1999)(unpublished disposition). Nevertheless, it is not sufficient for Rosenbarker to allege merely that he suffered from mental impairment at the time of the earlier decisions; he must show that the mental impairment eroded his ability to pursue his claims. *Id.*

In this case, Rosenbarker claims he was depressed and under the influence of drugs and alcohol during the time in question. Tr. 53-55, 334. In his May 28, 1997 affidavit, Rosenbarker

attests to the fact that he was binging on alcohol due to depression and was unable to make good decisions. Tr. 334. He further claims he was "totally incompetent for several months" after each application was denied. *Id.* The Court has reviewed the record and finds the evidence does not support Rosenbarker's claim of depression or substance abuse to the degree he alleges which would have affected his ability to pursue his claims.

On January 12, 1983, Rosenbarker sought mental health care. Tr. 317. In the intake interview, he denied ever having received any mental health treatment and gave no history of substance abuse or depression for the time period in question. On January 12, 1983, at the intake interview, Mr. Ehinger, the mental health provider, noted "It is extremely difficult to ascertain the extent to which Mr. Rosenbarker is legitimately physically disabled and, therefore, consequently reactively depressed. Although he is claiming to be in pain and depressed, he does not seem particularly eager for treatment . . . ." Tr. 319. On January 18, 1983, Dr. Beamer, a psychiatrist, noted Rosenbarker complained of depression associated with his back pain. Tr. 327. On February 8, 1983, Mr. Ehinger noted, "I am less convinced of his chronic pain and depression and more suspicious of his intentions to acquire data for a disability benefit contest." Tr. 326. On June 2, 1983, Mr. Ehinger diagnosed Rosenbarker as malingering and noted, "I question his sincerity and his motivation for coming to the clinic. Pt showed essentially no motivation or interest in therapy. Keep open p.r.n. for 6 months. If no contact, close case." Tr. 323. Because Rosenbarker had made no contact for ten months, on January 24, 1984, Mr. Ehinger terminated Rosenbarker's care. Tr. 322. Rosenbarker had been seen six times. *Id.*

Having reviewed the record, the Court finds that other then his affidavit, Rosenbarker has not submitted proof that his alleged mental impairment at the time of the 1979 and 1982

applications interfered with his ability to pursue those claims. Accordingly, because Rosenbarker has failed to present a colorable constitutional claim, the Court lacks jurisdiction to review the Commissioner's refusal to reopen Rosenbarker's claims for disability benefits or the Commissioner's determination that Rosenbarker's claims are barred by *res judicata.*

## RECOMMENDED DISPOSITION

The Court recommends this case be dismissed for lack of subject matter jurisdiction.

 

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.